### WILLIAM BARNES v. SAMUEL ZETTLEMOYER.

Decided March 23, 1901.

**1.—Negligence—Injury to Adjoining Property—Storage of Dynamite—Evidence of Custom.**

Where plaintiff sues for injury to his storehouse caused by an explosion of from thirty-five to forty-five pounds of dynamite kept by defendant, a hardware merchant, in an adjoining building, it was error to exclude evidence as to the general custom and usage in regard to keeping dynamite in hardware stores, and the amount ordinarily kept, the issue being as to want of due care; but evidence as to how particular persons conducted their hardware business in this respect was not competent.

**2.—Same—Reasonable Use of Property.**

The interests of another will not deprive the owner of property of its ordinary and reasonable use, and to create liability for injury resulting from such use negligence must be shown.

**3.—Dynamite—Keeping Stored—Nuisance.**

See evidence as to the explosive character of dynamite upon which the court declines to hold that the keeping of thirty-five to forty-five pounds of it by hardware merchants is, in itself, a nuisance, as being a constant menace to property in that vicinity.

Appeal from Comanche. Tried below before Hon. N. R. Lindsey.

*Wilkinson & Reid,* for appellant

*G. H. Goodson* and *J. W. Boynton,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—The parties to this controversy owned adjacent lots in the town of Comanche, upon each of which was a one-story stone building, used by its owner as a place of business. Appellant's house was destroyed by fire, and appellee's was injured at the

same time by an explosion in that of appellant. This action for damages was consequently brought by appellee against appellant, and resulted in a verdict and judgment in his favor for $500, from which this appeal is taken. The ground of liability was thus stated in appellee's petition: "That on the night of December 31, 1899, the defendant then carelessly and negligently had in his house a great quantity of dynamite, to wit, between about thirty-five and forty-five pounds, and at and theretofore kept and had kept said dynamite in one lot in a box, open and uncovered, in the front part of defendant's store underneath a counter, with heavy counters and shelving above and immediately around and adjacent to it loaded down with heavy articles of hardware; and at the same time and place kept, and had kept, in his said building, in very close proximity to said dynamite, large quantities of gunpowder, gun and pistol cartridges, and other explosive matters, and under circumstances that it was then and there apparent to the said Barnes, and was then and there apparent to any person of ordinary care and prudence in the handling and keeping of said explosives, that in the event said explosives should explode, the same would be dangerous and destructive to property adjoining thereto, and especially that it would destroy plaintiff's said house. * * * And that its said injury and destruction was directly and proximately caused by the carelessness and negligence of the defendant in having and keeping in his said store building, in the manner before stated, said dynamite and other explosives, and in his carelessness and negligence in the manner in which he kept and handled said explosives therein, to wit, in handling, keeping, and permitting them to be in such near proximity to each other that said explosives became and were the active agents in the explosion of said dynamite, and the active agents in aiding and adding to the force and effect dynamite explosion; and, unless in the manner above stated, by such carelessness and negligence of the defendant, plaintiff's house would not have been injured."

The court submitted the issue to the jury in its twofold aspect, as thus alleged, of liability both on account of the quantity of dynamite kept and on account of the manner in which it was kept.

To meet the issue as to the quantity of dynamite kept, appellant offered to prove by F. M. McDermott, as stated in his brief, "that the witness had had a number of years' experience in the hardware business, and in the handling of dynamite in connection therewith, in the town of Comanche, Texas, and was acquainted with the custom and usage of well appointed and well conducted hardware establishments and concerns, both in the town of Comanche and generally, as to the amount of dynamite kept in stock and on hand by them, and their manner of handling same in the conduct of their business; that the keeping in stock and handling of dynamite is a part of the hardware business; and that it is the custom and usage of well-appointed and well-conducted hardware establishments and concerns in this section of the country, and generally throughout the country, to carry in stock as much as fifty pounds of dynamite of the kind carried by defendant at the time of said fire."

This testimony, as well as that of other witnesses as to how they did business in Comanche, was excluded as incompetent, and to this ruling error is assigned upon the ground that, as stated in the proposition submitted under the assignment, "the question being as to ,whether or not there was a want of due care on the part of appellant in this case, evidence of usage and custom was admissible to show what constituted due care as applied to said particular case."

The authorities cited in support of this proposition seem to sanction the admissibility of such testimony. Railway v. Cowser, 57 Texas, 303; Railway v. Harriett, 80 Texas, 81; 27 Am. and Eng. Enc. of Law, p. 902, and cases there cited; Oil Co. v. Swan (Tenn.), 14 S. W. Rep., 928. In the last case cited, which was somewhat analogous to the one at bar, the following language was used by the Supreme Court of Tennessee: "The evidence, to be competent, must amount to something going to establish a custom in the business under investigation." The evidence offered as to how a particular person did business in that case was held to be inadmissible, the ground of objection being that, while it might be shown how a given business is conducted in general, it was incompetent to show how any particular person or concern does business. Tested by this rule, which we understand to be the correct one, the testimony of McDermott, if material in this case, should have been admitted, but that of other witnesses as to how particular persons in Comanche conducted the hardware business, which was the kind of business appellant was engaged in, was properly excluded. See Lawson on Usage and Custom, page 318, section 168, as to the admissibility and effect of usage and custom as evidence.

The materiality of the testimony of McDermott, however, is strenuously denied by counsel for appellee, upon the ground that the quantity of dynamite kept by appellant made the act of keeping it a nuisance; the contention being that if a person keeps on hand such a quantity of dynamite as would by explosion destroy the property or lives of others, he does so at his peril, negligence or no negligence, in support of which the case of Bradford Glycerin Company v. St. Mary's Woolen Manufacturing Company, 54 Northeastern Reporter, 528, is cited. What was decided by the Supreme Court of Ohio in that case is thus stated in the syllabus by the court: "Nitroglycerin is a substance usually recognized as highly explosive and dangerous, the storage of which at any place is a constant menace to the property in that vicinity. And one who stores it on his own premises is liable for injuries caused to surrounding property by its exploding, although he neither violates any provision of the law regulating its storage nor is chargeable with negligence contributory to the explosion." The formula so often quoted from the opinion in the familiar English case of Fletcher v. Rylands was made the basis of that decision, but as appears from cases cited in the opinion of the Ohio court, this formula is by no means of recognized authority in America. Indeed, the weight of authority in this country, including our own Supreme Court, seems opposed to its unqualified acceptance. See opinion

of Justice Williams in Railway v. Oakes, 58 S. W. Rep., 999. But if the Ohio decision be accepted as good authority, as it perhaps should be, when applied to a similar case, we are yet of opinion that it may be distinguished from the case before us. Dynamite is much less liable to explode than pure nitroglycerin, and for that reason has come into general use as an article of commerce, the explosive power of the nitroglycerin entering into its composition being greatly modified by the other and larger constituent—infusorial earth or other absorbent. The testimony in this case was quite conflicting as to the danger to be apprehended from the storage of dynamite such as appellant handled. For instance, one witness testifying as an expert, who was to some extent corroborated by another, though contradicted by still another, stated in substance: "That dynamite can not be exploded by fire; that it burns up; that it takes concussion to explode it, and that in practical use it is exploded by means of a cap; that it might also perhaps be exploded by striking it on a hard surface with a hammer, though he had never seen it done; that in his opinion the explosion of gunpowder or other substance near it could not cause it to explode, unless the substance exploded was in actual contact with it; that he knew this from the fact that a stick or more of it exploded in a hole of rock or earth will not explode other sticks in holes a few inches distant; that if any quantity of it should be exploded under a board suspended a few inches above it that the board would not be moved; that unless something is in contact with it above, it operates downward; that if twenty-five or forty pounds had exploded under the circumstances mentioned in this case, it would have left a large excavation in the ground [which was not done in this instance], and would not have affected the roof; that if no such excavation as made, he would say that the dynamite was consumed, and did not explode; that he thought fifteen pounds of gunpowder situated under a base shelf, and about jam with it, with heavy shelving and hardware above, would be sufficient to drive some of said shelving and hardware through the roof, and blow away a part of the roof."

We would have to ignore such testimony as this to hold that the quantity of dynamite kept by appellant was such as to render its storage, as was held in the Ohio case with reference to nitroglycerin, "a constant menace to the property in that vicinity," and this we would not be warranted in doing. It was for the jury to say from the testimony whether or not, owing to the quantity stored or the circumstances under which it was stored, it was, as alleged by appellee, "then and there apparent to any person of ordinary care and prudence in the handling and keeping of said explosives, * * * that the same would be dangerous and destructive to property adjoining thereto." The prevailing rule in this country is that the interests of another will not deprive the owner of property of its ordinary and reasonable use, and that to create liability for injury resulting from such use negligence must be shown. As a circumstance, therefore, to be considered by the jury in determining whether or not appellant was using his property in the ordinary manner

and as a person of ordinary prudence and care would do, it was competent for him to show the usage of the business in which he was engaged.

For the error in excluding such testimony, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*