Richards, J.
'The American Gypsum Company is engaged in the mining of gypsum, and the preparation, storage and shipment of gypsum products, in Ottawa county, and was defendant in the court of common pleas in an action brought to recover damages for the destruction and injury of certain cars owned by and in the custody of The Lake Shore & Michigan Southern Railway Company. These cars, on March 22, 1911, were on a sidetrack extending along and over the property of the Gypsum Company and were on that date damaged by an explosion of dynamite situated in a small shanty called a thaw-house, owned and used by the Gypsum Company.
The trial resulted in a verdict and judgment in favor of the railroad company in the amount of *147 $964.67, and to reverse the judgment so rendered this proceeding in error is brought in this court.
The record discloses that in the manufacture of gypsum products the Gypsum Company uses large quantities of dynamite, purchasing the same by the carload containing some 18,000 pounds, and that the explosive so purchased is stored in a magazine on the premises of the company, located approximately 2,000 feet from the thaw-house, which thaw-house is near the track of the railroad company. The storage magazine itself did not explode, but the damage was caused from an explosion in this small structure used for thawing the dynamite. The evidence is not clear as to whether any other structures were in the immediate vicinity of the place where this thaw-house was erected.
The testimony indicates that dynamite freezes at a temperature of 40 to 50 degrees Fahrenheit and that the practice • of the company was to remove from the magazine to the thaw-house a box of dynamite containing 50 pounds, so that the same might be thawed and made ready for use by the company during the day or night on which it was so removed. The company used in its business two shifts of workmen, and this dynamite had been removed a few hours before the explosion and placed in this building for the purpose indicated. In the morning the practice was to bring in what dynamite was necessary for use during the day shift, and then again in the evening another quantity was brought in sufficient for use by the night-shift. The thaw-house ivas about six by eight feet and approximately six feet in .height. It had galvanized siding, and the roof was made of roof *148 boards covered also with galvanized siding. Inside this building was a steam radiator used for the purpose of thawing the dynamite, the steam pipes coming from the boiler house 200 feet distant. In front of the radiator was a wire cloth, extending from the floor to the ceiling, so as to prevent any dynamite coming in contact with the radiator. The practice was, after the dynamite had become sufficiently thawed, for it to be carried away by the shot firers to the mine and there used.
So far as the record discloses the cause of the explosion was unknown, and the vital question arising is whether liability exists on the part of the Gypsum Company under the circumstances stated and in the absence of negligence.
All the dynamite used by the company was shipped in over the tracks and along the siding of the railroad company, and from there hauled to the storehouse, from which it was removed to the thaw-house and from thence to the mine, as needed in the operation of the company’s business.
The trial judge charged the jury, following the lines indicated by the language of the supreme court in Bradford Glycerine Co. v. The St. Marys Woolen Mfg. Co., 60 Ohio St., 560, that “the person who for his own purpose brings on his lands and collects and keeps there anything' likely to do mischief, which includes nitroglycerine or dynamite, if it escapes or explodes, must keep it there at his peril, and when he does so he ís prima facie answerable for all the damage that is the natural result of the explosion.” He further stated to the jury in that connection that the defendant could excuse itself only by showing that the explosion *149 was due to the plaintiff’s fault, and that it has used ordinary care in the handling and use of the dangerous matter; or due to an act of God. Of course the latter part of the charge mentioned is clearly wrong in that if it appeared that the explosion was due to plaintiff’s fault the defendant need not in addition show that it used ordinary care in the handling and use of the dynamite.
This criticism, however, does not dispose of the vital question involved in this case, which is, whether the rule of liability for the explosion' of nitroglycerine, announced in the decision of the supreme court to which reference is above made, is applicable to the explosion of dynamite under the facts shown in this record. In the Bradford Glycerine Company case there were at the storage magazine, including the quantity being placed therein, more than 750 quarts of- nitroglycerine, and the building was used, as its ■ name indicates, for a place of storage. In the case now under consideration the explosive is dynamite, the evidence showing the explosive ingredient of which to be nitroglycerine and the strength of the dynamite used by this company only 20 per cent. It further appears that dynamite when carefully and properly prepared is much less liable to explode from accidental causes than is nitroglycerine, which is in a liquid form, while the dynamite is a solid. Furthermore, in this case the amount of the explosive was only 50 pounds or a little over, and if we compute only the weight of the explosive ingredient it would be a little more than 10 pounds; and the evidence introduced tends to- show that the amount of explosive in the thaw-house at any one time *150 was only that which would be reasonably sufficient for use in the operation of the mines for a portion of one day and for the reasonable conduct of the defendant’s business. The record discloses that, although the company in the conduct of its business at this place has used over 100 cars of dynamite of 18,000 pounds each, it has never heretofore had an accidental explosion.
• Under these circumstances, and after a painstaking investigation of the authorities, this court is not able to apply to this case a rule that would hold the Gypsum Company liable without evidence showing negligence on its part. The supreme court said in the Bradford Glycerine Company case, already cited, that nitroglycerine was recognized as a constant menace to the property in its vicinity. The evidence in the case we have under consideration would scarcely authorize that conclusion as to dynamite. At any rate it would go no farther than to raise a question for submission to the jury, under proper instructions, as to whether the practices of the company in the thawing and handling of the dynamite were such as to constitute a constant menace to property.
The question was under consideration by the supreme court in Louden v. City of Cincinnati et al., 90 Ohio St., 144, which was a case to recover damages resulting from the use of explosives in blasting. In that case the supreme court, speaking through Donahue, J., use this language at page 149:
“The question presented is whether the owner of property may make use of high explosives on his own premises in the accomplishment of a law *151 ful purpose, provided he uses due care, notwithstanding the necessary, natural or probable result thereof is to injure or destroy adjacent property.”
The rule indicated by the question propounded is an aid in determining whether the use of dynamite in the case at bar, in the exercise of due care, was such as to necessarily, naturally or probably result in. the destruction or injury of adjacent property, and to be a constant menace thereto. It surely can not be stated, as a matter of law, that the handling of dynamite, under the circumstances disclosed, would come within the condemnation of the court as indicated in the two cases cited, but rather that its handling, as disclosed by the evidence, would raise a question of fact to be determined by the jury. In view of the very general use of dynamite as a commercial product, we are unable to apply, under all the circumstances, the rule announced by the supreme court in the Bradford, case as applicable to nitroglycerine. One of the purposes in the manufacture of dynamite is to render the nitroglycerine used therein safer to handle, as well as more convenient, and in the accomplishment of that purpose various percentages of nitroglycerine are used in dynamite; but it will not do to say, because nitroglycerine in its liquid form is highly dangerous and a constant menace to adjacent property, that all grades of dynamite, no matter how small the percentage of nitroglycerine therein, come within the language used by the supreme court in the case to which reference has been made. One of the prime objects in manufacturing dynamite is to provide a less dangerous explosive than nitro *152 glycerine, and to . further that purpose nitroglycerine is mixed with some solid and absorbent inert substance such as sawdust, wood fibre, charcoal or a silicious earth, as is stated in the Encyclopedia Britannica. In defining the qualities of dynamite the Century Dictionary says that “The object of the mixture is to diminish the sensitiveness of nitroglycerine to slight shock, and so to facilitate its carriage without impairing its explosive quality.”
In a case where the evidence is such as is contained in the record under review it must be left to the jury, under appropriate instructions, to determine as to the liability of the company, and in determining this question the location and method of construction of the thaw-house, the quantity of dynamite placed therein, the. means employed to accomplish the thawing, and all other facts and circumstances bearing on the question of care or the want thereof by the company should be considered.
The most recent and exhaustive discussion which we (have seen of the questions involved in this case may be found in 11 Ruling Case Law, beginning at page 651. An interesting case, fully annotated, shedding light on these ■< .questions is Henderson v. Sullivan, 16 L. R. A., N. S., 691, 159 Fed. Rep., 46. A case involving a kindred question was carefully considered by the supreme court of Alabama, and is entitled Whaley v. Sloss-Sheffield Steel & Iron Co., 51 So. Rep., 419, 164 Ala., 216.
See also Barnes v. Zettlemoyer, 25 Tex. Civ. App., 468, 62 S. W. Rep., 111; Derry Coal & Coke *153 Co. v. Kerbaugh, 222 Pa. St., 448, 71 Atl. Rep., 915, and Mayer, by etc., v. Brudno, 16 C. C., N. S., 102.
In view of these authorities the language of the trial judge on the subject of liability constitutes prejudicial error.
On this same subjéct the Gypsum Company asked the trial-judge to instruct the jury, before argument, that if they found the explosion was the result of pure accident and without fault on the. part of anybody, the verdict must be for the defendant. The court refused to so instruct the jury and in so doing committed prejudicial error.
The evidence introduced on the subject of damages related solely to the amount paid for repairs of the cars. The true measure of damages wpuld not necessarily be the amount paid for repairs, but would be the difference between the value of the cars immediately before the damage and their value immediately thereafter. The reasonable cost of repairs may often shed light upon the extent of the damage, and thus be competent evidence, but it is only competent as tending to show the difference in value of the cars before and after the explosion. It is manifest that in some cases cars after being thoroughly repaired might be less valuable, or might be more valuable, than before they suffered damage, and this clearly shows that the reasonable value of the repairs may not indicate the actual damage. The charge of the court does not touch the subject of damages, but on a retrial of the case the rule indicated, that the true measure of damages is the difference in the value *154 of the cars before and after the explosion, should be adopted.
The answer filed by the Gypsum Company contains various interrogatories to be answered by the railroad company. These interrogatories were answered in writing by that company under oath, and the paper containing the answers filed in court. On the trial of the case the railroad company offered in evidence its answers to the interrogatories, and these, except number two which answer involves a conclusion, were received, over the objection and exception of the Gypsum Company. The General Code provides in Section 11350 that such answers, so far as they contain competent testimony on the issues, may be used by either party. The plain language of this section authorized the railroad company to introduce these answers as a part of the testimony in the case, in so far as the answers did not go beyond the interrogatories propounded. In the judgment of this court the answers were properly received, except the latter portion of the answer to interrogatory number four, which answer contains matter not called for by any interrogatory.
The verdict was returned at one term of court and the judgment thereon not rendered until a later term, the trial court refusing to provide in the judgment as rendered that interest should be computed from the first day of the term at which the verdict was returned. This constitutes error •to the prejudice of the railroad company, which has filed a cross-petition in error in this case. In cases where judgment is not rendered at the same term as the verdict is returned, the judgment cred *155 itor is not, by the delay of the court in rendering judgment, to be deprived of his right to interest, and the judgment should, therefore, provide for interest from the first day of the term at which the verdict was returned unless the action was brought during that term, in which event interest would be computed from the return of the verdict.
The petition filed in the common pleas court claims interest from the date of the damage to plaintiff’s property. In a case resulting in damage to personal property where the plaintiff is found entitled to recover, he is also entitled to interest to be computed from the date he suffers the damage. In personal injury cases, as this court has heretofore announced, interest is not properly allowed as such; but even in cases of that kind the lapse of time may be taken into consideration in assessing the. damages to be awarded.
The judgment will be reversed and the cause remanded for new trial.

Judgment reversed, and cause remanded.

Chittenden and Kinkade, JJ., concur.