[Civ. No. 3787. First Appellate District, Division One.—April 27, 1921.]

FRANK LONGUY, Respondent, v. LA SOCIETE FRANCAISE DE BIENFAISANCE MUTUELLE· (a Corporation), Appellant.

[1] NEGLIGENCE—STUDENT NURSE IN HOSPITAL—VOLUNTARY SERVICE IN CARING FOR PATIENT—LIABILITY OF HOSPITAL.—A student nurse in training at a hospital who volunteered to take care of an infant patient for the night and who was given permission so to do by the head nurse of the hospital was directly engaged in the scope of her employment and the hospital was liable for all actual damage resulting from the nurse's negligence in the course of such employment.

[2] ID.—ACTION FOR DEATH OF PATIENT—EVIDENCE—CERTIFICATE OF DEATH—IMPEACHMENT OF UNDERTAKER.—In an action against a hospital for the death of a child patient alleged to have been caused from burns received while the patient was being cared for by a student nurse, the certificate of the hospital's resident physician that the child died of pneumonia was inadmissible to discredit the testimony of the undertaker as to the extent of the burns on the body, on the ground that he also had signed the certificate, since he merely certified to the interment and place of burial as required by statute.

[3] ID.—CAUSE OF DEATH—EVIDENCE—EXCLUSION OF CERTIFICATE—HARMLESS ERROR.—Where in such action the defendant claimed that death was from pneumonia, the failure to admit in evidence the certificate of the hospital's resident physician to that effect was harmless, since the certificate would only have been *prima facie* evidence of the facts therein stated, and the best evidence was that of the given testimony of the physician himself from which the only inference deducible was that death was caused as stated in such certificate.

[4] ID.—BURNING FROM INHALATOR—CARE IN SELECTION—EVIDENCE—KIND USED IN CERTAIN HOSPITALS.—In an action against a hospital for the death of a patient alleged to have been caused from burns received from an inhalator in which eucalyptus oil was being vaporized while the patient was being treated for pneumonia, it was error to admit and to refuse to strike out evidence as to the kind of inhalators used at two other hospitals, which was admitted for the purpose of showing lack of care in the selection of the inhalator in question, in the absence of any evidence as to the practice, usage, and custom of hospitals generally in the city or elsewhere.

[5] ID.—CAUSE OF DEATH—ATTEMPT TO PROCURE TESTIMONY—EVI-DENCE.—In such action, it was error to exclude an offer of proof that plaintiff attempted to procure defendant's resident physician to testify that in his opinion the death of the patient was caused from burns and not from pneumonia.

[6] ID.—CONDITION OF PATIENT—PROBABLE CAUSE OF DEATH—OPINION OF NURSES—EXCLUSION ERRONEOUS.—In such action, it was error to exclude evidence of graduate nurses with long and varied experience, and who were familiar with the condition of the patient during the time when she was in the hospital, whether or not in their opinion the child would have died from disease at or about the time she did die if she had not been burned.

[7] ID.—HOURS OF EMPLOYMENT OF NURSES—INSTRUCTION.—In such action, an instruction that no female student nurse shall be employed in any hospital more than eight hours during any day, and that the purpose of the law is for the protection of such female employee, was properly refused.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Bernard J. Flood, Judge. Reversed.

The facts are stated in the opinion of the court.

Chickering & Gregory and Evan Williams for Appellant.

Daniel A. Ryan for Respondent.

WASTE, P. J.—The defendant, a corporation commonly known as the French Hospital of San Francisco, appeals from a judgment after a verdict in favor of the plaintiff, rendered in an action brought by plaintiff to recover damages for the death of his infant child, caused, it is alleged, by being fatally burned while an inmate and under the care of the defendant. Liability of the defendant is predicated upon the alleged carelessness and negligence of one of the student nurses of the defendant placed in charge of the child by the hospital superintendent. Trial was by a jury, which rendered verdict in plaintiff's favor in the sum of $5,134.

The little girl, two and one-half years old, and her mother were members of a mutual association, paying certain monthly dues for the privilege of membership, which entitled them to surgical and medical treatment *gratis* at the French hospital. During the influenza epidemic in Oc-

tober, 1918, the child was very ill with bronchial pneumonia, probably induced by influenza. She was taken to the hospital by the mother and remained there until her death, which occurred about two weeks later. During the latter part of the period oxygen was administered on two occasions to keep the baby alive, and she was in a cyanotic or blue condition. The mother remained with the child, occupying the private room with her in the hospital, until the morning of October 26th, when she returned to her home. Before leaving the hospital the plaintiff and his wife endeavored to secure the services of a trained nurse, but, due to the epidemic, such service was not to be had. Thereupon two student nurses, who were then in training at the hospital, volunteered to take care of the baby during the night, dividing the time between them. As the state law forbade them working more than eight hours, they went to Miss Murphy, head nurse of the hospital, and asked her permission to take care of the child, stating that it was purely a voluntary act on their part, but as the child was very ill and needed watching, they were willing to take care of the patient during their extra hours. Miss Murphy stated she did not want them to work all day and all night too, and that the rules of the hospital forbade their working overtime, but that under the circumstances it would be all right for them to do so.

One of these nurses took care of the patient until midnight when the other relieved her. The child had great difficulty in breathing, and an awning was constructed over its bed within which was placed a lighted alcohol inhalator, containing eucalyptus oil, the purpose of which was to diffuse a vapor which would relieve the respiration. About 3:30 A. M. the nurse then in charge left the room where the baby was lying for a few minutes. When she returned she found the bedclothes on fire. She lifted the child from the bed; the fire was extinguished and a doctor was immediately summoned, who administered first aid.

There is an irreconcilable conflict in the testimony as to the extent and nature of the burns the child received. Doctors and nurses who saw the baby after the fire testified that the burns were, for the most part, slight, first degree burns, limited to the face, one knee, and the arms. The parents of the child and the undertaker who prepared the

body for burial testified that the burns were very deep, extending over more than one-third of the body. The child died some sixteen hours after the fire. Whether or not her death was due to the effect of the burns, or to bronchial pneumonia induced by influenza, is one of the issues of the case.

[1] It is first contended by the appellant that the act of the nurse in caring for the child on the night of the fire was purely voluntary and an act of mercy, outside of her regular duties, and did not come within the scope of her employment by the defendant, and was something which the hospital in no way could have required her to do, and from which it in no way profited. On this ground it disclaims any responsibility in the premises. We think, however, that there was no mere unwarranted assumption by the nurse of a duty not assigned to her, but that she was directly engaged within the scope of her employment in caring for the patient and ward of appellant, and with the authorization on the part of appellant as to amount to an assignment. Consequently, appellant is liable for all actual damage resulting from the nurse's negligence in the course of such employment. (*Turner* v. *North Beach & M. R. R. Co.*, 34 Cal. 594, 599.) The facts bring this case squarely within the construction of section 2338 of the Civil Code adopted by the supreme court in *Johnson* v. *Monson*, 183 Cal. 149, [190 Pac. 635]. The refusal of the trial court to instruct the jury contrary to this view was not error.

[2] During the trial defendant offered in evidence a properly certified copy of the death certificate of the child, which the court refused to admit. The exhibit, among other things, contained the required medical certificate of death, signed by Dr. Juilly, resident physician of the hospital, that he attended the deceased and that the cause of death was "broncho-pneumonia, contributory influenza." Appellant contends that the certified copy should have been admitted, because it is by law made *prima facie* evidence in all courts of facts therein stated. (Stats. 1915, p. 575; Act 4302, Deering's Gen Laws.) Among other reasons why the certificate should have been admitted, the defendant asserts, is that it tended to discredit the testimony of the witness Godeau, the undertaker who prepared the body of

the child for burial. He testified that the burns of the infant were so serious as to expose the ribs and covered about one-third of the body of the child. The statute provides that the undertaker, as well as the attending physician, shall sign the certificate and shall file the same with the local registrar, and it is the contention of appellant that as Dr. Juilly had certified that the death was due to broncho-pneumonia, Godeau either testified to an untruth when describing the gravity of the burns, or connived at an attempt by the attending physician to hide the real cause of death. In either case, argues the appellant, his credibility as a witness would have been destroyed. But the undertaker made no statement in the certificate as to the cause of death. He merely certified to the interment and the place of burial. As to him the certificate was properly excluded. Dr. Juilly was a witness at the trial. He testified that the child probably had influenza, and in substance and effect that her death was caused by bronchial pneumonia; that she did not suffer any shock from the burns, but would have died at about the time she did die.

[3] The failure to admit the certified copy of the death record in evidence to establish the cause of death, therefore, resulted in no harm to the appellant. At the most the certificate would only have been *prima facie* evidence of the facts therein stated. The best evidence was the testimony of the physician himself, the only inference from which was that the cause of death was as stated in the certificate.

[4] Certain rulings of the court on the admission and exclusion of evidence during the trial are specified as error by appellant. Respondent contended that appellant did not use ordinary care in the selection and use of an inhalator in which eucalyptus oil was vaporized by means of an alcohol lamp. In support of his contention he called Dr. Margaret Bigby of the Children's Hospital and Louis C. Levy, superintendent of Mt. Zion Hospital. Over the objection of the appellant, these witnesses were allowed to testify as to the kind of inhalators used at those institutions, neither of which was the kind used by the appellant, and neither of which was in common use in the community. Appellant objected to the introduction of the evidence in the first instance upon the ground that it was incompetent,

irrelevant, and immaterial, and did not tend to prove any issue in the case, and upon the further ground that what one particular hospital used or did not use did not tend to prove in any way safety in the use of any other appliance. After further cross-examination of the witnesses, appellant moved to strike out their testimony upon substantially the same grounds. The court denied the motion. We think the action of the trial court in admitting the evidence over the objection of the defendant, and refusing to strike it out, was error. Testimony as to the general custom and practice of well-appointed and managed hospitals in the matter of the use of inhalators would have been competent on the question of care and diligence exercised in the premises by the appellant. (6 Thompson on Negligence, sec. 7882; *Burns* v. *Sennett & Miller,* 99 Cal. 363, 373, [33 Pac. 916]; *Hennesey* v. *Bingham,* 125 Cal. 627, [58 Pac. 200]; *Pederson* v. *Spreckles,* 87 Fed. 938, 944, [31 C. C. A. 308].) But such evidence, to be competent, must amount to something going to establish the general custom and practice in the business under investigation. (*Standard Oil Co.* v. *Swan,* 89 Tenn. 434, [10 L. R. A. 366, 15 S. W. 1068]; 29 Am. & Eng. Ency. of Law, 419.) Consequently the evidence in this case did not satisfy the rule. Neither of the witnesses testified as to the general practice, usage, or custom of hospitals in San Francisco or elsewhere, but only as to the conduct of the particular institution with which she and he were connected. Their evidence should have been excluded. (*Barnes* v. *Zettlemoyer,* 25 Tex. Civ. App. 468, [62 S. W. 111, 112]; *Blanchette* v. *Holyoke St. Ry.,* 175 Mass. 51, 54, [55 N. E. 481].)

[5] While the witness Dr. Juilly was testifying, on direct examination, he stated that a conversation took place at his office shortly before the trial at which the plaintiff, another person, and the doctor were the only persons present. Counsel for appellant asked the witness to state the conversation. The question was objected to by respondent's counsel, and the court asked the purpose of the question, whereupon counsel for appellant offered to show by the witness that an attempt was made during the conversation to have Dr. Juilly testify that in his opinion the burns caused the death of plaintiff's daughter, and that Dr. Juilly said he did not ''intend to commit perjury for any-

body.'' The court sustained the objection and refused to permit appellant to make its further offer of proof along the same lines. Whether the alleged attempt on the part of plaintiff to procure Dr. Juilly to testify favorably in plaintiff's behalf took the form of threat, bribery, or solicitation does not appear, but we think the trial court should have at least permitted the further offer of proof, for evidence of a party's falsehood or fraud in the preparation and presentation of his case is receivable against him. (*People* v. *Chin Hane,* 108 Cal. 597, [41 Pac. 697]; *Luhrs* v. *Kelly,* 67 Cal. 289, [7 Pac. 696]; *People* v. *Wong Chuey,* 117 Cal. 624, [49 Pac. 833].)

[6] Appellant sought to elicit from the nurses at the hospital, who were familiar with the condition of Emma Longuy during the time she was in the hospital, whether or not in their opinion the child would have died from disease at or about the time she did die if she had not been burned. The court sustained the plaintiff's objection to the testimony. Two of these witnesses were graduate nurses with long and varied experience. The other two were student nurses at the hospital. We think the court was in error in rejecting this testimony. There can be no doubt that one who is shown to be a graduate nurse and to have been constantly engaged in the calling of a professional nurse for years may properly be called upon as an expert to give evidence of the character of that sought to be elicited by appellant. (*Kimic* v. *San Jose Ry.,* 156 Cal. 379, 391, [104 Pac. 986]; *Barsi* v. *Simpson,* 31 Cal. App. 612, 614, [161 Pac. 127].) The fact that two of the witnesses had not yet graduated would be a matter for the jury to consider in determining what weight should be given to their testimony. One of the vitally important issues in the case was whether the little girl died as a result of the burns or from bronchial pneumonia, from which she was suffering. Evidence introduced on behalf of the plaintiff strongly tended to support the former theory, while the theory of the defense was that the child died as the result of the disease. In this view of the case the testimony sought to be elicited from the professional nurses who were familiar with the baby's condition became very material and should have been admitted.

[7] Appellant requested the court to charge the jury that it is the law in this state that no female student nurse shall be employed in any hospital more than eight hours during any day, and that the purpose of this law is for the protection of such female employee. We are unable to follow appellant in its argument as to its competency and relevancy, and we think the instruction was properly refused.

As the case must be reversed for the errors pointed out, it becomes unnecessary for us to consider the contention of the appellant that the verdict in this case was excessive.

Judgment is reversed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 23, 1921.

All the Justices concurred.