## CITY OF PAMPA v. TODD et ux.
### No. 3523.

Court of Civil Appeals of Texas. Amarillo. May 20, 1931.

Rehearing Denied June 10, 1931.

Cook, Smith & Teed, of Pampa, for appellant.

W. M. Lewright, Ben S. Baldwin, and B. L. Parker, all of Pampa, for appellees.

RANDOLPH, J.

This was a suit to recover damages filed by appellees against appellant for the negligent death of their daughter Mickey Todd. This is the second appeal in this case. See (Tex. Civ. App.) 11 S.W.(2d) 247 for opinion on the former hearing, in which a statement of the case is made which is here adopted so far as it is applicable. Additional statements will be made as necessary.

The appellant, having pleaded that Lunsford, the operator of the car, was guilty of negligence in driving a Ford coupé with four grown people therein and that the deceased, Mickey Todd, was guilty of contributory negligence in riding in a Ford coupé while the same contained four grown people, appellant alleges that it was error for the court to allow appellees' witnesses to testify that it was more or less a common sight to see four people riding in Ford coupés.

The jury found that Lunsford was not guilty of negligence in undertaking to operate the coupé with three other persons in the car with him, and that the deceased, Mickey Todd, was not guilty of negligence in riding in the coupé in which she was riding when same was occupied by *three other persons beside herself. In passing upon these questions of negligence, it must be remembered that the court had defined negligence and proximate cause, ordinary care, etc., in his charge to the jury. The evidence does not show that the deceased, while traveling in the coupé, was directly or in any way controlling its movements and that the sole charge of negligence against her was her presence in the coupé with three other persons.

■■ Whether or not the presence of four people riding in a coupé was negligence, and where deceased was charged with contributory negligence and the driver of the car was also charged with negligence, depends on the circumstances of the case. This may or may not be negligence, according to whether or not it was customary for four persons so to ride. Evidence of its being customary for people to ride four in a coupé was admissible to meet the charge of contributory negligence brought against deceased. Missouri, etc., Ry. Co. v. Crane, 13 Tex. Civ. App. 426, 35 S. W. 797.

■ To rebut an allegation of a want of due care in a particular case, evidence of a general usage or custom is admissible to show what is due care as applied to a particular case. Barnes v. Zettlemoyer, 25 Tex. Civ. App. 468, 62 S. W. 111; Houston, etc., Ry. Co. v. Cowser, 57 Tex. 293; Gulf, etc., Ry. Co. v. Harriett, 80 Tex. 73, 81, 15 S. W. 556.

■ The witnesses testified that it was a common sight for four persons to ride in a Ford coupé and this tends to offset the charge of negligence. In cases where the question involved is of such a character that the jury will be aided by being advised of the practices of others under like conditions, such evidence is competent, at least where the custom is general or universal, i. e., the purpose of holding this evidence admissible is not that the negligence of the deceased may be excused, but that the jury may be furnished with a guide as to whether or not the conduct charged against her constituted negligence.

■ The appellant contends that it was reversible error for the court to allow the witness Lunsford to testify that the driving of his car across the ditch would have resulted in wrecking his coupé.

The defendant's exception to the court's action presents a different question from the one stated in its proposition. Lunsford, the driver of the car, after he had testified that when he saw the ditch he attempted to turn his car to the left and thus avoid it, was asked by appellees' counsel:

"Why did you turn your car to the left? A. I did not think that I could make it.

"Q. You did not think you could make what? A. I did not think I could drive across it.

"Q. That is, you thought it would wreck your car?"

To the last question, counsel for the defendant objected for the reason that it was "leading and suggestive and it was not the testimony of the witness."

The objection that the question was leading and suggestive is not the one presented by the proposition. The proposition is that the court erred in permitting the witness to testify that to have driven his car across the ditch would have resulted in wrecking it. We therefore overrule this contention.

■ The appellant also assigns as error that the witness Rice was permitted to testify, over its objection, that the ditch in question was too deep to cross. The witness testified that he saw the ditch and did not want to cross it and backed up and turned around and went in another direction; that he did not want to cross it; that it was too deep for him to cross.

While the witness gave his conclusions, he also stated a fact which is necessarily his judgment, that the ditch was too deep to drive across.

■ The appellant further assigns as error that the court erred in refusing to require the witness Lunsford to answer the question of the defendant: "Had it been night and your lights burning, could you have seen where the

culvert had been any considerable distance before you got to it?" The plaintiffs objected to this question for the reason that the answer would be a conclusion of the witness which he was not qualified to state and the court refused to permit the witness to answer.

The defendant pleaded that it had not left any ditch by the removal of the culvert from across the street, but only a slight depression in the road which was plainly visible for a considerable distance on either side. It appears from the evidence that the culvert was removed by the employees of the defendant during the afternoon of the day of the accident—which accident occurred that night. It further appears that the witness Lunsford had not seen the ditch at night after the removal of the culvert until he saw it just before the accident, and that he did not then see it until he was within ten to fourteen feet of the ditch; that he did not see it again until next morning, at which time the culvert had been replaced over the ditch. This being shown, to require an answer to a hypothetical question that could only result in the witness guessing and indulging in speculation was improper and we overrule this contention.

The defendant complains of certain excerpts from the argument of the plaintiffs' attorney, which excerpts are as follows:

"I have been on it (this case) about three years. You gentlemen have just been on it about three days. I don't feel and cannot feel that my three years of labor is going to be lost here, although I well know that regardless of the verdict you gentlemen render, the size of it, or anything else, that the City of Pampa is going to appeal the case. I want to ask you gentlemen at the outset in considering this case, to disregard that entirely. Whatever you see fit to allow us and I don't care if it is fifty dollars, or seven thousand five hundred or five thousand dollars, or what it is, the City of Pampa is going to appeal it and keep these people out as long as they can. The evidence in this case shows that they have done it for three years, and I expect they will try to do it for another three years."

"I will say this, that I don't think there is a man on this jury but what knows right down in his heart right now, that regardless as to how this Court has framed these questions, and they are all framed to you in accordance with the law, as to what is right and just about this matter,—and the right and justice of it is that girl's life should be paid for by the people of the City of Pampa, —but, Gentlemen, remember that just as a sample of it, men, they have got the money to fight us with, and they are doing it, and just as a sample of it, Gentlemen, they are paying this Reporter here right now to take down what I say that in the hopes that in my zeal and enthusiasm in this argument that I will say something to you that can go to the Court of Civil Appeals with—"

"But, first, Gentlemen of the Jury, I want to get back to what I told you at the outset of my opening argument here. I say to you these questions were concocted for the protection of the corporations and municipal corporations, and I will say to you again that the theory of submitting special issues was done for the protection of corporations and municipal corporations."

"With all due respect for Charlie, (meaning one of the attorneys for defendant) I will say this right now, Charlie right now knows that these people should have a recovery in this case, knows it and has known it all along, but for some reason or another the Mayor and City Commissioners won't pay off, and they have done a pretty good job of it, but, Gentlemen, I will fight them until the lower regions freeze, and all I want is fairness and justice."

"Mr. Cook makes a great play out of the fact that all of those children other than these two practically appear to be worthless. Maybe they were, but there happened to be two of them who weren't, and what happened to them—the eldest Della was ruined in this very wreck."

"The theory is that I expect to prove by this witness that the girl Della Todd has been doing well to take care of herself because of injuries received in this wreck; that she has already sued the City of Pampa and got a judgment."

"You don't know when rheumatism is going to take this old father away; he might live until he is sixty, and he might live until he is eighty cramped up with rheumatism, and you don't know when he will die. You may gamble that it may be five years, or it may be ten years or fifteen years, twenty-five or thirty years, but if you gamble on it, men, for God's sake gamble on the side of justice, and give them the benefit of the doubt."

These arguments were made by plaintiffs' attorney without interruption or exception during the delivery of same, but afterwards bills of exception were prepared and were approved by the court. The objection to the argument of the attorney was that same was inflammatory and was calculated to influence the jury in rendering the verdict which they did render and was not invited by the defendant; that the argument was a reference to the financial ability of the plaintiffs, who were tenant farmers of very little means with a large family, and that the defendant was a municipal corporation.

It is not every improper argument made to a jury that will necessitate a reversal without counsel for the opposite party taking an exception and not every improper argument so made, where an exception is time-

ly taken, will require a reversal. It was never intended that an argument, even though improper, that did not influence the minds of the jury to such an extent as to make them ignore their duty under their oaths, should be used as an occasion for a reversal where the trial court was not afforded an opportunity to interpose and regulate the argument.

It has long been held that an objection must have been made and the trial court's attention called to the argument in order that the court may have his attention called to it and an opportunity given him of correcting the alleged error. One exception to this is where counsel in the argument of a cause before a jury uses inflammatory language so vituperative as to excite and inflame the jury to such an extent as will lead them, in their passion, to render a wrong verdict. The law presumes that this, occurring in the presence of the court, the court should know the effect of such language upon the jury and should accordingly prevent the evil effects of the argument without the necessity of having his attention called to it.

We are of the opinion that the language used was improper, but it was not so inflammatory as to place such argument in the class known as "inflammatory."

4 Words and Phrases, First Series, 3583, gives the adjective "inflammatory" as being derived from "inflamed," which is defined by Webster, in part, as follows:

"(1) To set on fire; to kindle; to cause to flame.

"(2) To excite or increase, as passion or appetite; to enkindle into a violent passion."

We think that the argument was subject to other objections, but the language used was not inflammatory and was not subject to the objection made.

In the case of Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W.(2d) 435, it appears that timely objection was made to the argument; hence it is not authority in this case. In the case of Dillingham v. Scales, 78 Tex. 205, 14 S. W. 566, the court's opinion shows that the defendants reserved an exception to the argument; hence it does not apply. See also Fidelity Union Casualty Co. v. Cary (Tex. Com. App.) 25 S.W.(2d) 302; Gulf, C. & S. F. Ry. Co. v. Dooley, 62 Tex. Civ. App. 345, 131 S. W. 831; Wichita Falls, R. & Ft. Worth Ry. Co. v. Emberlin (Tex. Civ. App.) 274 S. W. 991, 997; Western Union Telegraph Co. v. Burgess (Tex. Civ. App.) 60 S. W. 1023, in which the court recites the fact to be that objection was made at the very time the argument was made.

In the case of Gulf, C. & S. F. Ry. Co. v. Greenlee, 70 Tex. 553, 8 S. W. 129, 131, Judge Gaines lays down the rule to be: "An ex-

ception was taken to the language of one of the counsel for plaintiffs used in the closing argument to the jury. The language was not objected to when uttered, and the judge states in the bill of exceptions that his attention was engrossed, at the time, in the preparation of his charge, and that he only heard one of the remarks of which complaint is made, and that this he promptly checked. Without passing upon the question whether the language is of such a character as would require a reversal under any circumstances, we will say that the remarks were not so plainly prejudicial to defendant as to demand that the verdict be set aside, in the absence of an objection by its counsel at the time the words were spoken."

In the case of Vogt v. Guidry (Tex. Civ. App.) 229 S. W. 656, 658, where a judgment was reversed for improper argument, even though no objection was made, the court uses the following language: "It is the general rule that advantage cannot be taken in an appellate court of improper argument before a jury, unless objection be presented at the time the argument is made, and there are numerous Texas cases sustaining the rule. However, there are exceptions to the rule, and where the argument is intensely vituperative, and is based on matters not in evidence, and which necessarily must have caused prejudice and probably thwarted justice, it becomes the duty of the trial judge to set aside the verdict of the jury, even though no objections were urged to the argument when made"—citing authorities.

While we are of the opinion that the language of the counsel used in his argument to the jury was not inflammatory within the terms of the definition of that word, in order for it to have been injurious and inflammatory the evidence should show an excess verdict of the jury over what would constitute a normal or reasonable verdict before the case should be reversed. In this connection the question as to whether or not the verdict is so excessive that it indicates that the argument of counsel for plaintiffs had an effect on the jury in causing them to return a verdict not reasonably warranted by the evidence, we do not believe. The evidence shows that deceased was a girl about seventeen years old; that she was one who felt her obligation to help her father and mother financially; that she contributed of her small means for their support; that when she was not working for wages, she worked in the field with and for her father.

We can see no reason for differentiating this case in passing upon the excess, if any, and cannot hold as a matter of law that the verdict in the case is excessive.

In the case of Ward v. Cathey, 210 S. W. 289, 292, the Fort Worth Court of Civil Appeals says: "There is no mathematical

standard by which we can measure damages for injuries such as shown in this case. As stated by us in the case of Burnett v. Anderson [Tex. Civ. App.] 207 S. W. 540: 'The law merely declares that such damages shall be limited to just compensation, and the determination of that question is committed to the jury in a very large measure.' "

We therefore think that the verdict was not excessive and gave no indication that the jury acted from passion in fixing this amount.

We have examined all other assignments of error, and finding no reversible error, we affirm the trial court's judgment.