MOTORISTS MUTUAL INS. CO. ET AL. *v.* WALKER.

(No. D-88962—Decided August 14, 1970.)

Dayton Municipal Court, Civil Division.

*Mr. James P. Jones,* for plaintiffs.
*Mr. Herman Aronovitz,* for defendant.

RICE, J. This cause came on to be heard by the court, without the intervention of a jury, upon the pleadings and the testimony of both parties and their witnesses.

The case at bar involves a "subrogation-property damage" claim in which the matters of subrogation, insurance coverage and title to the automobile in the name of the plaintiff were stipulated to by and between the parties. Thus, only the issues of liability and damages remain to be determined by the court.

I. *Facts*

The accident in question occurred at the intersection of Norledge and Keenan Avenues. Norledge is a north-south street running into Keenan Avenue (which runs east and west) and forming a "T" intersection. Norledge thus forms the stem of the "T".

The plaintiff's evidence shows that on the night of April 5, 1969, a rainy and wet evening, she was operating her automobile in a westerly direction on Keenan Avenue, approaching the "T" intersection of Keenan and Norledge.

As she approached this intersection she observed the lights of the defendant's car approaching in a northerly direction on Norledge. The plaintiff assumed that the defendant would stop at the intersection, but such was not to be the case.

The defendant testified that he applied his brakes some 15 to 18 (on one occasion he said 15 to 30) feet from the intersection, but, because the roadway was wet and slippery, he slid completely through the intersection and his car came to rest against a fence bordering on the far side of Keenan Avenue. While his car was thus resting against the fence, he was struck by the car driven by the plaintiff as it came down Keenan Avenue.

The plaintiff testified that when the defendant slid through the intersection and across his line of travel on Keenan Avenue, she (the plaintiff) was only some five

feet away from the intersection and that, try as she did, there was no way she could stop her car or otherwise avoid the collision. In fact, the plaintiff cannot honestly state which collision came first—the collision of the defendant's automobile with the fence or the collision of her car with the defendant's.

The defendant stated that when his car came to rest against the fence, the plaintiff was still some 25 to 30 feet away and that since the rear end of his car was not over the center line on Keenan, the plaintiff could have avoided the collision in the exercise of reasonable care. On one occasion, the defendant claimed there were at least 30 seconds elapsing between the time he slammed into the fence and the collision with the plaintiff's car.

A witness for the defendant, one Harold Hudson, whose living room commands a view of the intersection in question, and who owns the fence the defendant slammed into, testified that he was in the process of sitting himself on his living room sofa when he observed the defendant slam into the fence.

He then got up, walked some twelve feet to his window (which he estimates took between 6 to 10 seconds) and, just as he arrived at the window, he observed the plaintiff's car come down Keenan and strike the defendant's automobile in the right rear side.

II. *The Issue*

There can be no question that the action of the defendant in going through the intersection of Keenan and Norledge without stopping his automobile (verified by all witnesses including the defendant) amounts to negligence. It thus remains to be seen whether the conduct of the plaintiff in striking the defendant's car as it was stopped against the fence amounts to negligence proximately contributing to the accident in question. In other words, assuming the defendant to have been negligent, is such negligence the sole proximate cause of the accident or does the plaintiff's conduct amount to contributory negligence barring her from recovery.

In addition, if the issue of liability is resolved in favor

of the plaintiff, has the plaintiff sustained her burden of proving damages in the amount prayed for.

III. *Decision*

A. *Liability*

It is fundamental that there can be no recovery for injuries where it appears that the person injured was guilty of contributory negligence, or, in other words, where the injury was the result of the mutual, concurring and contemporaneous negligence of the parties to the transaction. 39 Ohio Jurisprudence 622, Negligence, Section 84, and case notes. In a suit brought to recover for the alleged negligence of the defendant, if it appears that the plaintiff might, *by ordinary care,* have avoided the consequences of the negligence complained of, he is not entitled to recover. *Timmons* v. *Central Ohio Rd. Co.,* 6 Ohio St. 106; *Cleveland, C., C. & I. Ry. Co.* v. *Elliott,* 28 Ohio St. 340. One cannot recover for injuries occasioned by negligence, where he has himself also been guilty of negligence which contributed to the result. *Bellefontaine & I. Rd. Co.* v. *Snyder,* 18 Ohio St., 399.

The essential element of contributory negligence such as to bar recovery by the plaintiff is not the comparative extent or degree of the negligence. The test is rather whether the negligence of the plaintiff contributed to cause the accident and injury. Negligence on the part of the plaintiff, if it concurs with the negligence of the defendant directly to cause the accident and consequent injury, will defeat recovery by the plaintiff, whatever the degree, *even though slight in comparison* to the negligence of the defendant, if the fault of the plaintiff was operative. The plaintiff is precluded from recovery. *Bartson* v. *Craig,* 121 Ohio St. 371. (Emphasis added.)

A person must exercise ordinary or reasonable care to discover danger and avoid injury and if he does not fulfill his obligation in such respect, there can ordinarily be no recovery for an injury proximately contributed to by such lack of care. 39 Ohio Jurisprudence 634, Negligence, Section 90 and footnotes thereunder.

The ordinary care which one must exercise for his own safety and protection is that degree of care which an ordin-

arily reasonable and prudent person would exercise, or is accustomed to exercise, for his own safety and protection, under the same or similar circumstances. The law does not require extreme care. Such care only as ordinarily prudent persons could reasonably be expected to exercise under the same circumstances is the full measure required.

The exercise of ordinary care to avoid an injury is all that the law requires, and no one can be held to be negligent who exercises such care. The rule is that a person conducting himself as an ordinarily prudent person would, under the same or similar circumstances, is not guilty of contributory negligence. 39 Ohio Jurisprudence 634, Negligence, Section 91.

Ordinary care for one's own safety does not require a person to anticipate another's negligence. *Ziganek* v. *Cleveland Rd. Co.,* 19 C. C. (N. S.) 388. An individual to whom a duty of care is owed has the right to assume that it will be performed. *Baber* v. *Pendargast,* 32 Ohio St. 494. One may rightfully assume the observance of the law and the exercise of ordinary care by others, and action by him in accordance with such assumption, in the absence of notice or knowledge to the contrary, is not negligence. *Swoboda* v. *Brown,* 129 Ohio St. 512.

In order to determine the question of whether one has exercised ordinary care for his own safety, the excitement, confusion and danger of a situation must all be taken into consideration. An emergency situation does not change the requirement of ordinary care—only the factual question of what *amounts* to ordinary care is affected by the circumstances of the emergency. A person confronted with a sudden emergency is required to use only that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances. *Penna. Rd. Co.* v. *Lindahl,* 111 Ohio St. 502. The circumstances of the emergency and the apparent danger must be taken into consideration in determining the question of the exercise of ordinary care or the question of contributory negligence. *Cleveland Co-op. Coal Co.* v. *Snodgrass* (App.), 8 Ohio Law Abs. 279.

An emergency arises when there is a sudden or un-

expected occurrence or combination of occurrences which demand proper action, *Bruner* v. *McGlothlin* (App.), 66 Ohio Law Abs. 477, leaving no time for deliberation. *Helvich* v. *George A. Rutherford Co.*, 96 Ohio App. 367.

Errors in judgment on the part of the plaintiff in trying to escape imminent danger brought about by the defendant's negligence do not constitute contributory negligence, if the acts done were done such as ordinary prudent persons might have been expected to do under like circumstances, even though the injury would not have happened if the acts had not been done. *Interstate Motor Freight Co.* v. *Girard*, 29 Ohio App. 101.

Contributory negligence of the plaintiff is an affirmative defense and the burden of proving it is on the defendant. 39 Ohio Jurisprudence 2d 713, Negligence, Section 140, footnotes 10 and 11. The burden of proving contributory negligence must be sustained by the defendant by a preponderance of the evidence. 39 Ohio Jurisprudence 2d 715, Negligence, Section 140, footnote 15. Since the contributory negligence of a plaintiff, to bar recovery, must contribute as a proximate cause of his injury, the burden of proof is upon the defendant to show that the contributory negligence of the plaintiff was the direct and proximate cause of his injuries. *Bush* v. *Harvey Transfer Co.* 146 Ohio St. 657.

Applying the foregoing legal principles to the facts of the case at bar, the court reaches the following conclusions with reference to the issue of liability:

1. By pleading contributory negligence, the defendant, in effect, admits his own negligence.

2. The defendant owed the duty to stop at the intersection of Keenan at Norledge, which duty the plaintiff had a right to assume the defendant would perform. The plaintiff thus had the right to conduct herself on the assumption that the defendant would, by yielding the preferential right of way at the aforesaid intersection, conduct himself according to law. The plaintiff therefore violated no duty of care by proceeding along her way on Keenan Avenue.

3. Having assumed that the defendant would conduct himself according to law, and not, under the law, being bound to anticipate the defendant's negligence, when the defendant went through the intersection without stopping, the plaintiff found herself confronted with an emergency situation, in that there was a sudden or unexpected occurrence arising which demanded her prompt action.

4. Even if we assume, arguendo, that the plaintiff could have avoided the collision by going around the car or by applying the brakes and veering leftward (and this assumes as true the testimony of the defendant and his witness Hudson that the plaintiff was 25 to 30 feet and six to ten seconds away from the defendant's car when his car hit the fence), the plaintiff can, in the court's opinion, be guilty of, at most, only an error in judgment under the stressful emergency situation.

As indicated above, an error in judgment on the part of the plaintiff, in trying to escape imminent danger brought about by the defendant's negligence, does not constitute contributory negligence.

5. The court feels that, under the facts and circumstances of the case at bar, the defendant has failed to show as he must by a preponderance of the evidence that the plaintiff's actions in responding to this emergency situation lack that degree of ordinary care so as to render her guilty of contributory negligence and to thus bar her recovery. The court feels that the plaintiff was not, under the circumstances, afforded a reasonable opportunity to stop her vehicle and avoid a collision.

6. There is an attempt made to render the plaintiff guilty of contributory negligence by virtue of her having violated the "assured-clear-distance-ahead" requirement in that she was operating her vehicle in such manner as not to be able to bring it to a stop or to avoid a collision with the defendant's car when it became a discernible fixed object in her path. The court feels, in deciding the issue of liability on the theory of sudden emergency, that the "assured-clear-distance-ahead" rule does not apply, even if, once again, we assume as true the testimony of the de·

fendant and his witness, Hudson, as to the length of time between the defendant's hitting the fence and the plaintiff's colliding with the defendant and the fact that some six to ten seconds elapsed between the collisions.

In the case of *Erdman* v. *Mestrovich,* 155 Ohio St. 85, the court stated as follows:

"The assured clear distance ahead constantly changes as the motorist proceeds and is measured at any moment by the distance between the motorist's car and the limit of his vision ahead, or by the distance between the motorist's car and any intermediate discernible static or forward moving object in the street or highway ahead constituting an obstruction in the motorist's path or lane of travel."

Violation of the assured-clear-distance-ahead rule consists of the operation of a motor vehicle at a greater speed than will permit the operator thereof to bring it to a stop within the "'assured clear distance ahead," unless the assured clear distance ahead is, without his fault, suddenly cut down or lessened by the entrance within such clear distance and into his path or lane of travel of an obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith.

In the case at bar, the court feels that the plaintiff's assured clear distance was, without her fault, sufficiently cut down and lessened by the entrance into her path, within the limit of her vision ahead, of the defendant's automobile. The court feels that the principles of the *Erdman case* apply and that, in the case at bar, the plaintiff was unable, in the exercise of ordinary care to avoid the collision.

See also the case of *Sherer* v. *Smith,* 155 Ohio St. 567, in which the court stated the "assured-clear-distance-ahead" rule has no application in a situation where a person, motor vehicle or other object suddenly enters the path of another motor vehicle in such manner that the operator of such other motor vehicle is afforded no reasonable opportunity to stop his vehicle and avoid a collision.

The defendant having failed to sustain his burden of

proving the plaintiff guilty of contributory negligence by a preponderance of the evidence, and the defendant's negligence having been previously determined, the court enters judgment for the plaintiff on the issue of liability.

B. *Damages*

The evidence on damages, while not proven with that degree of exactitude which the court would prefer, is, nonetheless sufficient to support a judgment in the amount prayed for. There was an attempt made by the plaintiff to introduce evidence from a Herbert Eldridge concerning certain repairs he made to the plaintiff's automobile. Testimony as to the repairs performed by Eldridge both as to the degree of the damage and the location of the damage on the automobile, corroborated the plaintiff's testimony as to which part or parts of her automobile were damaged in the collision. Mr. Eldridge testified that the repairs were not only necessary, but that the charges for such repairs—$326.77—were reasonable and proper. In addition, the plaintiff testified to the effect that her automobile, while worth some $500 prior to the collision, was worth only $150 afterwards, thus fixing, in approximate terms, the extent of her damages.

Said testimony is sufficient proof of damages under the Ohio law, particularly, where as in the case at bar, there is no contradictory or rebutting evidence. In Ohio, although the general rule for recovery of damages for injury to personal property is the difference between the market value immediately before and immediately after the injury (*American Gypsum Co.* v. *Lakeshore & M. S. Rd. Co.*, 7 Ohio App. 145), such damages may be established by showing the reasonable cost of repairs necessary to restore it to its former condition as long as the cost of repairs is less than the diminution in market value caused by the injury, and as long as the cost of repairs does not exceed the value of the property itself before the injury. See 16 Ohio Jurisprudence 2d 202, Damages, Section 71 and footnotes thereunder. It is established in Ohio that an owner of personal property, because of such ownership, has a sufficient knowledge of its value to be aware and to

be able to give an opinion thereon which will be some evidence of its value. *Bishop* v. *East Ohio Gas Co.*, 143 Ohio St. 641.

Wherefore, the court enters final judgment in favor of the plaintiff for the sum of $326.57, with interest at the rate of 6 per cent from date, plus costs of suit.