Filed 4/19/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ROSS, | D079278 |
| Petitioner, | |
| v. | (Riverside County Super. Ct. No. PSC1403729) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | |
| Respondent; | |
| COUNTY OF RIVERSIDE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Kira L. Klatchko, Judge. Petition denied in part and granted in part.

James W. Parkinson, APLC, James W. Parkinson; Singleton Schreiber McKenzie & Scott, Benjamin Israel Siminou; Terry Singleton, A.P.C., Terry Singleton; Hewgill, Cobb & Lockard and Efaon Cobb for Petitioner.

No appearance for Respondent.

Woodruff, Spradlin & Smart, Daniel K. Spradlin and Keith Raoul Dobyns for Real Party in Interest.

# I. INTRODUCTION

Christopher Ross, a former prosecutor with the Riverside County District Attorney's office (DA's Office), sued the County of Riverside (the County) for whistleblower retaliation and disability discrimination after the DA's Office allegedly demoted him and refused to accommodate medical issues in response to Ross raising concerns that the DA's Office was prosecuting an innocent man for murder. Ross alleged the executive management team in the DA's Office retaliated and discriminated against him "at the specific direction," and with the "express knowledge and consent" of, then–District Attorney Paul Zellerbach.

During a deposition, the former district attorney who preceded Zellerbach, Rodric Pacheco, testified about a conversation he had with the current district attorney who succeeded Zellerbach, Mike Hestrin. Pacheco testified that he and Hestrin shared the view that Zellerbach was one of the most unethical attorneys they had encountered as prosecutors. According to Pacheco, Hestrin then revealed that an unidentified "County lawyer or lawyers" asked Hestrin to alter his anticipated testimony regarding his views of Zellerbach's ethical character.

Ross subpoenaed Hestrin for a deposition about his communications with the unidentified County lawyers, as well as regarding advice Hestrin provided to Ross in Hestrin's capacity as an official in the prosecutors' union in which Ross was a member. The County moved to quash the subpoena under the "general rule . . . that agency heads and other top governmental executives are not subject to deposition absent compelling reasons," such as "when the official has direct personal factual information pertaining to material issues in the action and the deposing party shows the information to

2

be gained from the deposition is not available through any other source." (*Westly v. Superior Court* (2004) 125 Cal.App.4th 907, 910-911 (*Westly*).)

The trial court granted the County's motion to quash, finding Hestrin's alleged communications with the unidentified County lawyers were irrelevant to Ross's retaliation and discrimination claims, and that Ross could obtain evidence regarding his union rights from other sources. Ross seeks a writ of mandate directing the trial court to vacate its order granting the motion to quash and to enter a new order denying it.

We deny the petition as it relates to evidence concerning Hestrin's role counseling Ross regarding his union rights. Ross has not shown the trial court abused its discretion by finding he could obtain this type of evidence from sources other than the sitting district attorney.

We grant the petition as it relates to alleged requests by the unidentified County lawyers that Hestrin alter his testimony regarding Zellerbach's ethical character. Assuming any attorney-client privilege ever protected such communications, Hestrin waived it by voluntarily disclosing the communications to Pacheco. And, although we agree with the trial court that the testimony is irrelevant to the merits of Ross's substantive claims against the County, the testimony is relevant to Zellerbach's credibility, and he will likely be a material trial witness. Testimony showing the unidentified County lawyers attempted to suppress or alter a witness's testimony about the credibility of a material witness is also relevant to show the County's consciousness of guilt.

Accordingly, we deny the petition in part, and grant it in part, as set forth more fully in our Disposition.

3

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Ross's Claims Against the County

We base our summary of Ross's claims against the County on the allegations in Ross's complaint and petition for writ of mandamus. We emphasize that these are merely unadjudicated *allegations*.

In 2005, Ross joined the DA's Office as a prosecutor. He was eventually assigned to the homicide unit.

In 2010, Zellerbach was elected district attorney for Riverside County, replacing Pacheco. Zellerbach installed Sean Lafferty as Assistant District Attorney.

In late 2011, Ross was assigned a murder case the DA's Office had filed against Roger Parker (the Parker case). The case was assigned to Ross after another prosecutor in the DA's Office refused to prosecute the case. After Ross reviewed the case file, he concluded there was insufficient evidence to prosecute Parker for murder. Ross repeatedly urged his superiors to drop the charges against Parker, but they refused.

In 2013, Ross learned DNA evidence exonerated Parker. Ross alleges he again urged Lafferty to dismiss the charges, but Lafferty refused and ordered Ross to withhold the exculpatory evidence from the defense. When Ross told Lafferty he had already given the evidence to Parker's counsel, Lafferty responded angrily.

Ross discovered additional exculpatory evidence later in 2013. An investigator with DA's Office interviewed a witness who identified Parker's roommate as the murderer. The investigator later located a jailhouse recording of Parker's roommate confessing to the murder.

Before Ross provided this evidence to Parker's defense counsel, Ross was abruptly reassigned from the homicide unit to the filing unit, a

ministerial department that reviews arrest reports and makes charging recommendations.

Ross asked the investigator to give the jailhouse recording of Parker's roommate to Lafferty. Ross alleges he again urged Lafferty to dismiss the charges against Parker, but Lafferty seemed more interested in whether Ross had provided the recording to Parker's defense counsel. Ross stated he had not yet done so, and asked if Lafferty would like him to. Lafferty declined the offer and assured Ross "he would take care of it." In fact, Lafferty allegedly had already instructed the investigator to withhold the recording from Parker's counsel.

The DA's Office finally dropped the charges against Parker, who was released in 2014 after spending nearly four years in custody.

Meanwhile, beginning in 2013, Ross began experiencing severe neurological symptoms. Specialists at Cedars-Sinai and the Mayo Clinic attributed Ross's symptoms to a concussion syndrome sustained while deployed to Iraq with the Army. The specialists advised Ross that stress would trigger his symptoms.

Accordingly, Ross requested that his supervisors stop assigning him additional murder cases until his medical evaluations were complete. However, Ross's superiors not only refused the request, but they transferred him from the homicide unit to the filing unit.

In response, Ross sought guidance from Hestrin, whom Ross asserts was president of the Riverside County prosecutors' union (the Union). Hestrin provided Ross advice, counseling, and support.

Eventually, Ross's superiors placed him on administrative leave and refused to allow him to return to work without a doctor's note. Ross again sought advice from Hestrin, who informed Ross that the doctor's note

requirement violated Ross's rights under the memorandum of understanding (MOU) between the DA's Office and the Union. Ross informed the DA's Office it was violating his union rights, but the DA's Office refused to take him off administrative leave.

In April 2014, when it became clear to Ross that the DA's Office had effectively terminated him, Ross resigned.

In June 2014, Hestrin defeated Zellerbach in the election for district attorney for Riverside County.

In July 2014, Ross filed this lawsuit against the County, Zellerbach, Lafferty, and other employees of the DA's Office. Ross asserted claims for (among other things) whistleblower retaliation (Lab. Code, § 1102.5) arising from his efforts to persuade the DA's Office to dismiss the Parker case; disability discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940); and violating FEHA by failing to engage in a good faith interactive process to determine whether reasonable accommodations could address Ross's disability. Ross alleged the individual defendants other than Zellerbach "acted at the specific direction of Zellerbach and with his express knowledge and consent of their actions." The individual defendants were ultimately dismissed, leaving only the County as a defendant.

The trial court granted summary judgment for the County, but our court reversed the judgment in 2019. (See *Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 592.)

## B. Ross's Deposition Subpoena to Hestrin

In early January 2021, Ross served a subpoena and notice to take Hestrin's deposition in late February. The notice contained 11 categories of document requests regarding the Parker case and DA's Office policies and

6

procedures under Zellerbach. The parties met and conferred regarding the scope of Hestrin's deposition, and whether it should proceed at all.

In the meantime, on February 12, 2021, Ross took the deposition of Rodric Pacheco, the district attorney who immediately preceded Zellerbach in office. Pacheco testified he is friends with Hestrin and has stayed in touch with him, including by discussing this case. Pacheco further testified that when he called Hestrin "to give him a heads up" that Pacheco "heard that [Hestrin] was going to be deposed," Hestrin "revealed certain information that might be important here."

Specifically, Pacheco testified as follows about his conversation with Hestrin:

> "Well, we were talking about our respective opinions of Mr. Zellerbach as one of the most . . . unethical lawyers we've ever seen as prosecutors. And we were discussing that and he said that the County lawyer or lawyers were telling him not to say that. And his response to them was to say, 'I ran on that'—this is what he told me—'I ran against Mr. Zellerbach' and said that loudly. 'I'm not changing my testimony about that. He's clearly unethical.'

> "And that's what he related to the County lawyers who wanted him to say something different. This is what he said. I obviously wasn't a part of that conversation with those lawyers. They weren't his lawyers. They were lawyers for the County. . . .

> "I mean, . . . I've heard worse things and I've heard smaller things. It's pretty bad but, you know—they obviously didn't want him to testify in that fashion."

Pacheco elaborated that Hestrin "was obviously offended and . . . was adamant he wasn't going to say that. He made it real clear that—of his opinion, his belief, his observation of Mr. Zellerbach, and that he was going to testify truthfully in that respect."

7

When asked if he "g[o]t the impression from Mr. Hestrin that the attorneys representing the County were suborning perjury or trying to," Pacheco responded:

> "Well, Mr. Hestrin made it very clear that they tried to get him to say that Mr. Zellerbach—that they didn't want him to say that Mr. Zellerbach was unethical. And Mr. Hestrin made it very clear that he was going to tell the truth and not say that. In fact, quite the opposite. And not for me to judge."

Pacheco testified he did not "know the names of the lawyer or lawyers . . . that had those conversations with . . . Hestrin." It is, thus, unclear whether the lawyer or lawyers were associated with the outside law firm representing the County in this case, the DA's Office, the County's internal office of county counsel, or some other entity. (For convenience only, we will use the label "unidentified County lawyers" when referring to the lawyer or lawyers referenced in Pacheco's deposition.)

Ross later amended his deposition notice of Hestrin to include 27 categories of document requests, including documents regarding any requests by the unidentified County lawyers for Hestrin to alter his testimony about Zellerbach's ethical character, and documents regarding Hestrin's role with the Union.

### C. The County's Motion to Quash

The County moved to quash Ross's deposition subpoena to Hestrin on the basis Ross had not shown a compelling need to depose a top governmental official. (See *Westly, supra*, 125 Cal.App.4th at pp. 910-911.) The County argued that, contrary to Ross's assertion, Hestrin was not the Union president when Ross sought his advice, and Pacheco's testimony that Hestrin had related that unidentified County lawyers had asked him to alter his

8

testimony about Zellerbach was irrelevant, "unreliable," and "factually incorrect."

Ross opposed the motion, arguing "Hestrin is a percipient witness to relevant facts in the underlying case; and there is 'no other means to obtain the information.'" Regarding Hestrin's role with the Union, Ross argued Hestrin (1) "personally rendered assistance . . . when [Ross] experienced harassing and discriminatory treatment by his supervisors"; (2) "advised . . . Ross that he did not have to provide a doctor's note before returning to work"; (3) directed the Union to pay for Ross's legal administrative representative; (4) "continued to provide advice and support as head of the Union through his agents"; and (5) "was the 'de facto' Union leader" at all relevant times.

Ross also cited Hestrin's significant administrative duties with the Union, including setting meeting agendas and running meetings, liaising between the Union and the DA's Office, negotiating prosecutors' employment contracts and the MOU, controlling all Union representatives in their daily duties, and representing/controlling/directing all Union member grievances against the DA's Office. This made Hestrin "the most knowledgeable member . . . about the rights of members under the operative MOU."

In a supporting declaration, Ross acknowledged Hestrin left his role as president of the Union in 2013 when he declared his candidacy for district attorney, at which point Deputy District Attorney John Aki took over as president. But Ross maintained he "continued to look to Mr. Hestrin for direction, advice, and leadership." Ross specifically recalled "speaking directly with Mr. Hestrin about whether [Ross] had to provide a doctor's note to return to work . . . ." Ross also recalled having a 15-minute discussion with Hestrin in mid-2013 about "various MOU violations and harassing

9

treatment of" prosecutors by Zellerbach and his executive management team. Ross opined "Hestrin was undoubtedly the most knowledgeable member in the" DA's Office about prosecutors' rights under the MOU, and thus "qualifies as a percipient expert witness on [Ross's] employment claims against the County."

Ross acknowledged in his declaration that on several occasions he directed questions to Hestrin through Aki. Ross could not "recall a single instance where Mr. Aki did not get back to [Ross] with a response from Mr. Hestrin to the effect that 'Mike said . . .' or 'I spoke/talked with Mike about . . . and he said.' "

Regarding Pacheco's testimony that Hestrin told him unidentified County lawyers asked him to alter his testimony about Zellerbach, Ross argued in his opposition that Hestrin had firsthand knowledge about any such conversation, which was relevant because it violated criminal laws (attempted subornation of perjury and solicitation of subornation of perjury) and the California Rules of Professional Conduct. Ross also argued Zellerbach's ethical character was relevant to Zellerbach's motive for retaliating and discriminating against Ross.

In reply, the County argued it was not necessary to depose Hestrin regarding union issues because his general duties and knowledge are not "compelling areas of inquiry," and discovery produced by Ross showed he communicated with Aki, not Hestrin, about accommodation issues. Regarding Hestrin's comments about unidentified County lawyers allegedly asking him to alter his testimony, the County argued (1) Pacheco's deposition testimony lacked "context" and was "double hearsay"; (2) the outside law firm representing the County maintained it had no contact whatsoever with Hestrin before Pacheco's deposition; (3) there was "no mention of an

10

upcoming deposition" or "trial testimony"; (4) "any conversations counsel for the County had with Mr. Hestrin would clearly be protected by attorney-client privilege"; and (5) Hestrin's opinions regarding Zellerbach's character have "absolutely no relevance to Ross's claims . . . for disability discrimination and whistleblower retaliation," which "do not involve Mr. Zellerbach in any direct way."

## D. The Trial Court's Ruling

The trial court's tentative ruling was to grant the County's motion.

During the unreported motion hearing,[1] Ross emphasized that the accusation that unidentified County lawyers had asked Hestrin to alter his testimony was supported by the sworn testimony of a former district attorney. An attorney from the outside law firm representing the County responded that he personally spoke with Hestrin following Pacheco's deposition and confirmed that no one from the firm called Hestrin before Pacheco's deposition. Ross noted the County had not provided a declaration from Hestrin confirming this, which supported an inference that Pacheco accurately described his conversation with Hestrin.

Regarding union issues, the court indicated it appeared Ross could obtain this information from Aki. Ross responded by noting that "we do not know if Mr. Hestrin's testimony would be cumulative of John Aki's since Mr. Aki (currently the Assistant District Attorney) has not been deposed."

At the end of the hearing, the court took the matter under submission.

---

[1] In accordance with rule 8.486(b)(3)(A) of the California Rules of Court, Ross's appellate counsel submitted a declaration to this court "[e]xplaining why the transcript is unavailable and fairly summarizing the proceedings, including the parties' arguments and any statement by the court supporting its ruling."

11

On June 4, 2021, the court issued its ruling granting the County's motion to quash. Regarding Hestrin's role with the Union, the court found that, "to the extent Hestrin is aware of background information pertaining to this case . . . , that information could easily be obtained through other sources." To the extent "Hestrin has knowledge of the logistics of Union meetings, content of MOUs . . . , and experience handling Union matters," the court found Ross had not established either that such topics were relevant to his claims or that "he cannot obtain the same information from others, like John Aki, who was the Union president . . . and with whom Ross had similar conversations."

Regarding the alleged request that Hestrin alter his testimony about Zellerbach, the court ruled (in full): "Also, setting aside obvious privilege issues, discussions between Pacheco and Hestrin about what the County's lawyers allegedly said about Zellerbach are not relevant to [Ross]'s retaliation and discrimination claims."

## E. Writ Proceedings

Ross filed a petition in this court seeking a writ directing the trial court to vacate its order granting the County's motion to quash. After requesting and receiving an informal response from the County, we summarily denied Ross's petition.

Ross then filed a petition for review in the California Supreme Court, which granted the petition and transferred the matter back to this court with directions to vacate the order denying the petition and to issue an order to show cause why we should not grant the requested relief.

12

We issued an order to show cause.  The County filed a return and demurrer to the petition.[2]  Ross filed a reply.

### III.  DISCUSSION

Ross contends the trial court erred by granting the County's motion to quash.  We disagree in part, and agree in part.

### A.  Legal Principles

"California law provides parties with expansive discovery rights." (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 590 (*Lopez*).)  Thus, "[u]nless otherwise limited" by a court order, "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . , if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence."  (Code Civ. Proc., § 2017.010.)

Despite the otherwise broad availability of discovery, "[t]he general rule in California and federal court is that agency heads and other top governmental executives are not subject to deposition absent compelling reasons."  (*Westly*, *supra*, 125 Cal.App.4th at p. 910; see *Nagle v. Superior Court* (1994) 28 Cal.App.4th 1465, 1467-1468 (*Nagle*); *Contractors' State License Bd. v. Superior Court* (2018) 23 Cal.App.5th 125, 131 (*Contractors' State License Bd.*).)  "The general rule is based upon the recognition that

[2]     The County demurred on the basis that Ross failed to state facts sufficient to justify writ relief.  (See Code Civ. Proc., § 1089 ["the party upon whom the writ or notice has been served may make a return by demurrer, verified answer or both"].)  "Where, as here, the demurrer is based on that ground and only issues of law are presented by the petition, there is no need to consider the return and demurrer separately."  (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 455, fn. 7.)

13

' . . . an official's time and the exigencies of his everyday business would be severely impeded if every plaintiff filing a complaint against an agency head, in his official capacity, were allowed to take his oral deposition. Such procedure would be contrary to the public interest, plus the fact that ordinarily the head of an agency has little or no knowledge of the facts of the case.' " (*Nagle*, at p. 1468; see *Westly*, at p. 911; *Contractors' State License Bd.*, at p. 131.)

"This rule has been applied in numerous cases involving an array of constitutional officers, board members, and agency heads" (*Contractors' State License Bd.*, *supra*, 23 Cal.App.5th at p. 131), including district attorneys (*People ex rel. Lacey v. Robles* (2020) 44 Cal.App.5th 804, 826-827 (*Lacey*)). And the rule applies regardless of whether the official is a named defendant or a third party (*Westly*, *supra*, 125 Cal.App.4th at p. 910), or "whether the official gained the information sought while in his or her present position or while serving in prior, lower ranking positions at the agency" (*Contractors' State License Bd.*, at p. 133). "Thus, where a party seeks to depose a high government official, and the official moves for a protective order, the burden is on the deposing party to show that compelling reasons exist for permitting the deposition." (*Id.* at p. 132, citing *Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282, 1287 [applying similar rule to "apex" deposition of corporate president].)

"An exception will be made to this rule only when the deposing party makes two showings. First, the deposing party must show that the government official 'has direct personal *factual*' "—as opposed to *legal*— " 'information pertaining to material issues in the action.' " (*Contractors' State License Bd.*, *supra*, 23 Cal.App.5th at p. 132, quoting *Westly*, *supra*, 125 Cal.App.4th at p. 911.) "Second, the deposing party must also show 'the

14

information to be gained from the deposition is not available through any other source.'" (*Contractors' State License Bd.*, at p. 132, quoting *Westly*, at p. 911; see *Nagle*, *supra*, 28 Cal.App.4th at p. 1468.)

"We review a ruling on a motion to quash, like other discovery orders, for abuse of discretion." (*Facebook, Inc. v. Superior Court* (2020) 10 Cal.5th 329, 359.) "This deferential standard of review requires us to uphold the trial court's determination, even if we disagree with it, so long as it is within reason." (*Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1312 (*Cates*).) "It is well settled that an appellate court reviews the ruling of the trial court, not its rationale, and may affirm a trial court ruling on any proper basis presented by the record, whether or not relied upon by the trial court." (*Ibid.*)

## B. Analysis

Because Hestrin was district attorney at the time Ross sought to depose him, Ross was not entitled to take the deposition unless he could show Hestrin "had direct personal factual information pertaining to material issues in this case that is not available through any other source." (*Lacey*, *supra*, 44 Cal.App.5th at p. 827 [affirming protective order in favor of the sitting district attorney].) As we now explain, we conclude the trial court acted within its discretion in finding Ross did not meet this burden with respect to discovery about union issues; but the court erred in finding Ross did not meet his burden with respect to alleged requests by unidentified County lawyers that Hestrin alter his testimony about Zellerbach.

### 1. Union Issues

Ross seeks to depose Hestrin regarding two categories of Union-related issues: Hestrin's general expertise in Union affairs, and his specific role in counseling Ross about his union rights. We only briefly address Ross's

appellate challenge regarding these issues because, after the County thoroughly addressed them in its return, Ross failed to respond in his reply brief, thereby "implicitly conced[ing] . . . the [County]'s argument on this point." (*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 90; see *Western Bagel Company, Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 656, fn. 4.)

Hestrin's knowledge or expertise regarding Union affairs neither " 'pertain[s] to material issues in the action' " nor constitutes " 'direct personal *factual* information.' " (*Contractors' State License Bd.*, *supra*, 23 Cal.App.5th at p. 132; see *id.* at p. 134 ["While [the director of the Contractors' State License Board] certainly has knowledge of the Board's interpretation of the statutes and its enforcement history, that knowledge is not personal, factual information."]; *Westly*, *supra*, 125 Cal.App.4th at p. 911 [officials' "knowledge of what their official duties are" is "a matter of law, not personal factual information"]; *Deukmejian v. Superior Court* (1983) 143 Cal.App.3d 632, 634-635 [distinguishing between governor's "knowledge of [prison] conditions" and "administration policies . . . alleged to have contributed to the[m]"].)

As for Hestrin's direct role in counseling Ross, we discern no abuse of discretion in the trial court's finding that Ross could obtain this information from other sources. Ross acknowledged in his trial court declaration that Aki, rather than Hestrin, was the Union president when Ross was addressing alleged retaliation and discrimination issues. Ross further acknowledged Aki's extensive involvement in the counseling process, including by acting as a conduit for communications with Hestrin. And Ross's counsel acknowledged at the hearing on the County's motion that "we do not know if

16

Mr. Hestrin's testimony would be cumulative of John Aki's"—and therefore unnecessary—because Aki "has not been deposed."

Thus, with respect to evidence regarding union issues, we conclude the trial court acted within its discretion in finding Ross did not meet his burden to demonstrate Hestrin "had direct personal factual information pertaining to material issues in this case that is not available through any other source." (*Lacey*, *supra*, 44 Cal.App.5th at p. 827.)

### 2. Alleged Request That Hestrin Alter His Testimony

We reach a contrary conclusion regarding the trial court's ruling as to the alleged request by unidentified County lawyers that Hestrin alter his testimony about Zellerbach. As noted, the trial court's entire ruling on this issue was as follows: "Also, setting aside obvious privilege issues, discussions between Pacheco and Hestrin about what the County's lawyers allegedly said about Zellerbach are not relevant to [Ross]'s retaliation and discrimination claims."

### (a) Privilege

Although the trial court "set[ ] aside" and did not reach the "privilege issue[ ]," we will address it because we must affirm the trial court's ruling if it is correct on any theory, even one the trial court did not reach. (See *Cates*, *supra*, 154 Cal.App.4th at p. 1312.) We cannot affirm on the basis of privilege.

We will assume, without deciding, that an attorney-client relationship existed between Hestrin and the unidentified County lawyers Pacheco referenced in his deposition.[3] Thus, communications between Hestrin and

---

3    This is a generous assumption—Pacheco testified "[t]hey *weren't* [Hestrin's] lawyers. They were lawyers for the County." (Italics added.)

17

that counsel are presumptively shielded from discovery by the attorney-client privilege *unless* Ross can show the privilege does not apply. (See Evid. Code, § 917, subd. (a)[4] ["a communication made in confidence in the course of the lawyer-client . . . relationship . . . is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential"]; *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 ["the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply"]; *Manela v. Superior Court* (2009) 177 Cal.App.4th 1139, 1146 (*Manela*) [" 'We begin with the premise that there can be no discovery of materials which are privileged.' "].)

Ross argues the attorney-client privilege does not apply for two reasons. First, he maintains Hestrin waived any applicable privilege by disclosing his communications to a third party (Pacheco). (See § 912 [quoted, *post*].) Second, he maintains attorney-client communications aimed at procuring false testimony fall within the crime-fraud exception to the privilege. (See § 956, subd. (a) ["There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."]; *State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 648 [applying the crime-fraud exception where the defendant's former employee declared she "was instructed not to provide certain relevant information at [her] depositions" and was "pressured . . . into not revealing the existence of" certain evidence].) We agree Hestrin waived any privilege by disclosing the substance of his

---

4       Further undesignated statutory references are to the Evidence Code.

18

communications with the unidentified County lawyers; thus, we do not reach Ross's alternate claim regarding the crime-fraud exception.

By statute, the attorney-client privilege "is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication." (§ 912, subd. (a); see *Transamerica Title Ins. Co. v. Superior Court* (1987) 188 Cal.App.3d 1047, 1052 (*Transamerica Title*).)  The scope of the waiver "is narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver." (*Transamerica Title*, at p. 1052; see, e.g., *Manela*, *supra*, 177 Cal.App.4th at pp. 1146-1148 [waiver of privilege as to communications with two doctors did not waive the privilege as to communications with a third doctor on the same subject].)

The application of these waiver principles is straightforward here. Taking Pacheco's testimony at face value, the holder of the privilege (Hestrin) voluntarily disclosed a significant attorney-client communication (that unidentified County lawyers asked him to alter his testimony) to a third party (Pacheco).  There is no issue regarding the scope of the waiver because Ross seeks to depose Hestrin only about the specific communications Hestrin allegedly disclosed to Pacheco.  Thus, Hestrin waived any applicable attorney-client privilege.

### (b) Relevance

The trial court granted the County's motion to quash primarily on the basis that "discussions between Pacheco and Hestrin about what the County's lawyers allegedly said about Zellerbach are not relevant to [Ross]'s retaliation and discrimination claims."  Ross does not dispute that the requested discovery is irrelevant to the *substance of his claims*.  But he maintains it is relevant for another reason:  to show that the unidentified

19

County lawyers' alleged attempt to suppress or alter testimony about a material witness's credibility, which is always relevant (§ 210), is itself relevant and probative of the County's consciousness of guilt. We conclude that where, as here, a party presents credible evidence that another party has attempted (directly or through its agents) to alter the testimony of a witness about a material issue in the case—including the credibility of a witness likely to testify about a material issue—evidence regarding the alleged attempt is relevant, potentially admissible, and, thus, discoverable.

Parties are generally entitled to "obtain discovery regarding any matter . . . that is *relevant*." (Code Civ. Proc., § 2017.010, italics added; see *Lopez*, *supra*, 246 Cal.App.4th at p. 566.) Evidence regarding a witness's credibility is generally relevant and admissible. Section 210 defines " '[r]elevant evidence' " as "evidence, *including evidence relevant to the credibility of a witness* or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."[5] (Italics added.) Section 780 provides that, "in determining the credibility of a witness," the trier of fact "may consider" the witness's "character for honesty or veracity *or their opposites*." (§ 780, subd. (e), italics added.) And section 1101's general prohibition on the admissibility of character evidence does not "affect[ ] the admissibility of evidence offered to support or attack the credibility of a witness." (§ 1101, subd. (c).)

Similarly, evidence that a party sought to suppress or alter a witness's testimony may indicate a consciousness of guilt, and courts have found evidence of such efforts admissible when the testimony concerned issues

---

5    In its return, the County selectively quotes from section 210 to omit that the definition "includ[es] evidence relevant to the credibility of a witness."

critical to the case. (See *People v. Williams* (1997) 16 Cal.4th 153, 201 ["evidence of attempts to suppress evidence are relevant to show consciousness of guilt"]; *People v. Kendall* (1952) 111 Cal.App.2d 204, 213 (*Kendall*) ["Efforts to suppress testimony against himself indicate a consciousness of guilt on the part of a defendant, and evidence thereof is admissible against him."]; *Longuy v. La Societe Francaise de Bienfaisance Mutuelle* (1921) 52 Cal.App. 370, 376 (*Longuy*) ["evidence of a party's falsehood or fraud in the preparation and presentation of his case is receivable against him"].)

For example, in *Kendall*, evidence showing that the defendant asked a witness to testify differently at trial than she had before the grand jury, and that the defendant's wife offered to pay witnesses to leave the state and not testify, was admissible because it showed a consciousness of guilt. (See *Kendall*, *supra*, 111 Cal.App.3d at pp. 209, 213-214.) Similarly, in *Longuy*—a wrongful death case in which a young child hospitalized with pneumonia died after her respiratory equipment caught fire—evidence that the child's father asked the physician who determined the child died from the pneumonia to instead testify that she died from burns was admissible against the father. (*Longuy*, *supra*, 52 Cal.App. at pp. 371-372, 375-376.)

Applying these principles, evidence showing that unidentified County lawyers asked Hestrin to alter his testimony about Zellerbach's ethical character would be relevant to show the County harbored concerns about Zellerbach's credibility, which would be further relevant to show the County's consciousness of guilt.

The County acknowledges this is a potentially viable legal theory, but argues it does not apply here. That is, whereas the parties in *Kendall* and *Longuy* sought to alter testimony regarding critical issues involving the

merits of their cases, the unidentified County lawyers allegedly sought here to alter testimony relating only to a witness's ethical character, which is irrelevant to the merits of Ross's claims. We are not persuaded. What made the evidence in *Kendall* and *Longuy* admissible is that it was *relevant*. Likewise, here, evidence of Zellerbach's ethical character is *relevant* because it reflects on his credibility (§ 210; see § 780, subd. (e)), and he is likely to be a material witness at trial because Ross alleges Zellerbach "specific[ally] direct[ed]" the acts of retaliation and discrimination at issue.

Because Ross presented Pacheco's sworn testimony (rather than a mere speculative allegation) that unidentified County lawyers sought to alter Hestrin's testimony about the credibility of Zellerbach, who is likely to testify about a material issue in the case, evidence regarding the unidentified County lawyers' alleged attempt was relevant, potentially admissible, and, thus, discoverable. Further, although Hestrin is a high-ranking governmental official, he has personal factual knowledge of the matter, which cannot be obtained from any other source. That is, although there may be other sources of evidence regarding Zellerbach's credibility *generally*, there do not appear to be any other sources of evidence regarding attempts by unidentified County lawyers to alter witness testimony about Zellerbach's credibility—attempts that are independently relevant to the additional issue of the County's consciousness of guilt. Accordingly, the trial court erred by granting the County's motion to quash *as to this narrow issue*.

The County contends several deficiencies in Pacheco's deposition testimony render it an inadequate basis on which to justify deposing Hestrin. These contentions lack merit.

First, the County objects that Pacheco's testimony constitutes "double hearsay." But hearsay is not a valid basis on which to bar discovery. (See

*Smith v. Superior Court* (1961) 189 Cal.App.2d 6, 12; *Durst v. Superior Court* (1963) 218 Cal.App.2d 460, 464.) Moreover, allowing Hestrin's deposition would alleviate the County's concern by eliminating Pacheco's layer of hearsay.

Second, the County casts Pacheco's testimony as "scant" on details and lacking context regarding Hestrin's alleged statements. For example, the County posits "[t]here is no mention of an upcoming deposition or sworn testimony," such that counsel might merely have been advising Hestrin against "making public statements" about Zellerbach's ethics "to various individuals – like Mr. Pacheco." Pacheco's testimony refutes this claim. He testified he called Hestrin to give a heads-up that he "heard that [Hestrin] was going to be deposed." And Pacheco recounted that Hestrin repeatedly used the words "testify" and "testimony."

Finally, the County complains no fewer than five times in its return that Ross bases his deposition request on an alleged conversation between Hestrin and *unidentified* County lawyers. However, one valid purpose of discovery is to "obtain[ ] the identity and location of persons having knowledge of any discoverable matter." (Code Civ. Proc., § 2017.010; see *Gonzalez v. Superior Court* (1995) 33 Cal.App.4th 1539, 1546 ["the identity of witnesses must be disclosed if the witness has 'knowledge of any discoverable matter,' including fact, opinion and any information regarding the credibility of a witness (including bias and other grounds for impeachment)"].)

### (c) Conclusion

Our ruling is narrow. We conclude the trial court erred in granting the County's motion to quash only as it relates to alleged requests by unidentified County lawyers that Hestrin alter his testimony in this case about

23

Zellerbach's ethical character.  Hestrin's deposition will be limited to this topic.

Additionally, our conclusion pertains only to the *discoverability* of such evidence, not its ultimate *admissibility* at trial.  That determination remains within the trial court's discretion under section 352 (and other evidentiary considerations).

## IV.  DISPOSITION

Let a writ of mandate issue directing the trial court to vacate its order granting the County's motion to quash, and to enter a new order granting the motion only as it relates to union issues, and denying the motion as it relates to alleged requests by unidentified County lawyers that Hestrin alter his testimony.  The parties shall bear their own costs of this writ proceeding.


HALLER, Acting P. J.

WE CONCUR:


O'ROURKE, J.


DATO, J.